**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity and as Receiver of Franklin National Bank, Plaintiff,**

v.

**NATIONAL SURETY CORPORATION et al., Defendants.**

**Sol Neil CORBIN, as Trustee in Bankruptcy of Franklin New York Corporation, Plaintiff,**

v.

**NATIONAL SURETY CORPORATION et al., Defendants.**

**The AETNA CASUALTY AND SURETY COMPANY, Insurance Company of North America, National Surety Corporation and Fireman's Fund Insurance Companies, Third-Party Plaintiffs,**

v.

**Raymond T. ANDERSEN et al., Third-Party Defendants.**

**Nos. 76 C 494, 76 C 515.**

United States District Court, E. D. New York.

July 12, 1977.

Casey, Lane & Mittendorf, New York City, for plaintiffs.

Rivkin, Leff & Sherman, Garden City, N. Y., Paul, Weiss, Rifkind, Wharton & Garrison, Shea, Gould, Climenko, Kramer & Casey and Barrett, Smith, Schapiro & Simon, New York City, for defendants.

Poletti, Freedin, Prashker, Feldman & Goldman, New York City, for third-party defendant Howard Crosse.

## MEMORANDUM AND ORDER

PLATT, District Judge.

The third-party defendants Beisler, Hogan, Kittay, Kraft, Sears, Slaughter, Tuohy, Wangeman and Webster move for an order pursuant to Rules 9(a) and (b), 12(b)(6) and 14(a) of Federal Rules of Civil Procedure dismissing the third-party complaints of the third-party plaintiffs Aetna Casualty & Surety Company, Insurance Company of North America, National Surety Corporation and Fireman's Fund Insurance Companies ("Surety Companies").

## FACTS

On October 8, 1974, the Franklin National Bank ("FNB") was declared insolvent by the Comptroller of the Currency who appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver of FNB. On the same day the Court approved a purchase and assumption agreement whereby certain assets of FNB were transferred to the European-American Bank and Trust Company as the purchasing and assuming bank. The FDIC, as Receiver, sold to itself in its corporate capacity all the remaining assets of FNB, including the action to recover on various "Bankers Blanket Bonds"

issued by the Surety Companies to FNB and its parent, the Franklin New York Corporation ("FNYC"). In a companion action Sol Neil Corbin, as Trustee in Bankruptcy of FNYC, also sues on those bonds.

The Surety Companies, by way of third-party complaints, have claimed against the individual defendants named above who were directors of FNB and FNYC. These directors were only directors of those corporations and were not officers and so they will be referred to as the "Outside Directors". The Surety Companies allege that if they are liable to the FDIC and Corbin on the fidelity bonds for losses incurred by FNB, then the Outside Directors are liable to them for indemnity or contribution.

The Outside Directors move to dismiss the third-party actions on several grounds.

## DISCUSSION

■ The Outside Directors first argue that the Surety Companies have no standing to assert any claims against them because any claim in this case accrues solely to the corporation or its stockholders, citing *Index Fund, Inc. v. Hagopian,* 417 F.Supp. 738 (S.D.N.Y.1976). In that case the defendant banks were alleged to have participated in the causing of the loss of the plaintiff corporation. The Court held those banks had no standing to sue the directors of the plaintiff corporation because any such right could only be derived from the corporation. The Court fails to see how the *Index Fund* case is relevant here. If the Surety Companies pay the claims on the bonds to the plaintiffs, then to that extent the claims of the plaintiffs will be subrogated to the Surety Companies and a right of subrogation is clearly derived from the corporation that suffered the loss.

■ The Outside Directors also argue that the Surety Companies have no right to implead them because the bonds do not cover losses caused by directors acting as directors. The bonds do have a provision that states as follows:

"Section 2. THIS BOND DOES NOT COVER

\*      \*      \*      \*      \*      \*

(d) loss resulting from any act or acts of any director of the insured other than one employed as a salaried, pensioned or elected official or an Employee of the insured, except when performing acts coming within the scope of the usual duties of an Employee, or while acting as a member of any committee duly elected or appointed by resolution of the board of directors of the insured to perform specific, as distinguished from general, directoral acts on behalf of the insured."

This provision may well be a defense at trial if the Surety Companies can show that the loss here was caused by directors excluded from coverage by the above provision. It is far different, however, to argue that if the Surety Companies are found liable on their bonds, this provision prevents them from claiming against directors who may have contributed to the loss at FNB.

The only authority the Outside Directors cite in support of their position is *Hall v. Aetna Casualty & Surety Co.*, 89 F.2d 885 (2d Cir.), *cert. denied*, 302 U.S. 725, 58 S.Ct. 47, 82 L.Ed. 560 (1937). In that case, as in this one, there was a clause in the bond being sued on that limited liability of insurance companies to losses caused by employees or persons acting as employees. The insured bank went bankrupt, and the receiver of the bank settled his claim against the bank's directors. The surety company which had not yet paid on its bond argued that this settlement impaired its right of subrogation and discharged its obligation under the bonds. The Court held as follows (89 F.2d at 888):

"The contention that a settlement by the receiver of his claim against five of the directors of the bank resulted in the discharge of the defendant as surety, because it impaired its right of subrogation, is entirely without merit. The subrogation would only be to claims that the bank might have against DuBois and Moore [employees]. Causes of action against them, even though valueless, still exist."

The Outside Directors argue that this result was reached because the surety company never had any subrogation right against the directors and thus none was impaired. However, we read the Court's opinion to state that the receiver's settlement with the directors eliminated any rights the surety companies had against them and so any *future* subrogation would only be to claims that the bank might have against the employees. The receiver clearly had the right to make such a settlement for as the Second Circuit said in *Bunge Corp. v. London & Overseas Insurance Co.*, 394 F.2d 496, 497 (2d Cir.), *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968):

"It is well settled that, at least after a denial of liability by an insurer, the insured may enter into a settlement with a third party without prejudicing its rights against the insurer."

Furthermore, there appears to be no dispute that New York Insurance Law applies to the interpretation of the bonds, and the Courts in New York have held that "a surety or liability insurer is subrogated to the rights of the creditor against third parties whose wrongs have compelled the surety or insurance company to make payment." *American Surety Co. of New York v. Town of Islip*, 268 App.Div. 92, 48 N.Y.S.2d 749, 751 (App.Div. 2d Dept.1944). *See also, National Surety Co. v. Lybrand*, 256 App.Div. 226, 9 N.Y.S.2d 554 (App.Div. 1st Dept. 1939). This principle is sound, for if an insurance company pays on a bond it should "step into the shoes" of the corporation and should be able to assert claims of the corporation against third parties. To hold otherwise would mean that if the bonds covered the total loss of the corporation, no one would have a cause of action against third parties such as the directors who may have contributed to the loss. The corporation could not sue because it would be fully reimbursed, and the insurance companies could not sue because they would have no standing.

Therefore, we hold that the Surety Companies have standing to assert their claims against the Outside Directors.

The Outside Directors also argue that even if the Surety Companies as potential

subrogees have rights against them,[1] the Outside Directors owed no *direct* duty to the Surety Companies. Therefore, the claims in the third-party complaints that allege causes of action directly against them should be dismissed.[2]

We agree. The Surety Companies only have claims as subrogees against third parties and such rights are contingent upon their payment of the bonds. They have no independent rights against third parties. Therefore, the claims in the third-party complaints alleging such independent rights directly against the Outside Directors, should be, and the same hereby are, dismissed.

■ The Outside Directors also argue that the third-party complaints were improper under Rule 14 of the Federal Rules of Civil Procedure. The basis for their argument is not altogether clear, but whatever the basis, the Second Circuit has held that impleader in this type of case is permitted. *St. Paul Fire & Marine Insurance Co. v. United States Lines Co.*, 258 F.2d 374 (2d Cir. 1958), *cert. denied*, 359 U.S. 910, 79 S.Ct. 587, 3 L.Ed.2d 574 (1959). *See also, Bunge Corp. v. London & Overseas Insurance Co., supra.*

■ Next the Outside Directors argue that the third-party complaints do not meet the requirement of Rule 9(b) of the Federal Rules of Civil Procedure that claims of fraud be stated with particularity. The essence of the Surety Companies' claim against the Outside Directors is that they allowed or permitted the employees of FNB to engage in fraudulent activities. To the extent that the claims against the Outside Directors are for mismanagement or negligence, these are not covered by Rule 9(b) and thus are not challenged here. However, there is one allegation in each complaint[3] that alleges that the Outside Directors "*caused* or permitted" FNB to engage in false or "non arms-length" transac-

tions. These allegations by themselves are insufficient to meet the test of Rule 9(b).

The Surety Companies argue that their complaints incorporate by reference the complaints of the FDIC and the Trustee against them and these complaints supply the required detail. However, the FDIC's and the Trustee's action are for recovery on the bonds and thus primarily allege fraud by employees causing loss to FNB and FNYC. There is no allegation in those complaints that the Outside Directors "caused" the fraud at FNB so the requirement of particularity is not met by reference to them. Therefore, we dismiss those claims with leave to amend and allege any fraud with particularity.

Finally, the Outside Directors argue that this Court should exercise its discretion and dismiss the third-party complaints. The Court sees no good reason why it should.

Except to the extent indicated above, the Outside Directors' motion to dismiss must be, and the same hereby is, denied.

SO ORDERED.

---

1. Second claim of the Aetna complaint, first claim of the Insurance Company of North America complaint, second claim of the National Surety and Fireman's Fund complaint.

2. Third claim of the Aetna complaint, second claim of the Insurance Company of North America complaint, fourth claim of the National Surety and Fireman's Fund complaint.

3. Aetna complaint ¶ 25(g), Insurance Company of North America complaint ¶ 16(g), National Surety and Fireman's Fund complaint ¶ 18(f).