Johnnie Lee TIMMONS, Sr., Individually and as Administrator of the Estate of Cynthia P. Timmons; Joseph Partridge, Individually; Jacquelyn Ryals, Individually and as Administratrix of the Estates of Lenora Bailey and Burnice Edward Bailey; Michael Hicks, Individually; and Latrice Hicks, Individually and as Administratrix of the Estate of Desiree D. Hicks, Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant.

Civil Action No. CV296–132.

United States District Court,
S.D. Georgia,
Brunswick Division.

Nov. 18, 1996.

David Roberson, Roberson & Schmidt, Savannah, GA, John Thomas Woodall, Woodall & Mackenzie, Savannah, GA, for Johnnie Lee Timmons, Sr., Joseph Partridge, Jacquelyn Ryals, Clifford Partridge, Sr., Michael Hicks, Latrice Hicks.

Charles Kyle Reed, Long, Weinberg, Ansley & Wheeler, Atlanta, GA, Earl W. Gunn, Atlanta, GA, for Ford Motor Company.

## ORDER

ALAIMO, District Judge.

Plaintiffs bring this diversity of citizenship action against Defendant, Ford Motor Company ("Ford"), for the deaths of four passengers who were killed while riding in a vehicle that was manufactured by Ford. Plaintiffs base their action upon the products liability laws of the state of Georgia.[1] Currently before the Court is Plaintiffs' motion to dismiss the automobile driver who was impleaded by Defendant pursuant to Federal Rule of Civil Procedure 14(a). For the reasons stated below, Plaintiffs' motion will be **GRANTED**.

## FACTS

This case involves the deaths of four passengers who were riding in a 1994 Ford Explorer ("Explorer"). The Explorer, a sport utility vehicle manufactured by Ford, collided with an oncoming automobile driven by Dwayne Franklin Carr ("Carr"), who, apparently, was intoxicated while driving. After the collision, the Explorer allegedly came to rest and burst into flames, thereby killing Cynthia P. Timmons, Lenora Bailey, Burnice Edward Bailey, and Desiree D. Hicks. Plaintiffs allege that the Explorer was improperly designed to withstand any crash, either with an oncoming vehicle or with any other inanimate object. Plaintiffs contend that if the Explorer had been designed properly, the passengers may have been injured, but not killed, as a result of the crash.

On the contrary, Defendant contends that the Explorer is designed properly. Based upon the original collision, Defendant filed a third party complaint against Carr pursuant to Federal Rule of Civil Procedure 14(a).[2] Defendant contends that, pursuant to the law of Georgia, Carr is liable directly to Ford, and that Carr is properly a third-party defendant to this action.

## DISCUSSION

### I. *Rule 14*

The analysis required in this matter must begin with the express language of Rule 14(a) of the Federal Rules of Civil Procedure. Rule 14(a) states that a defendant, otherwise known as a "third-party plaintiff," may implead a third-party "not a party to the action who is or may be liable to *the third-party plaintiff* for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R.Civ.P. 14(a) (emphasis added) (governing when a *defendant* may implead a third party). In other words, Ford may implead Carr *only if* Carr is or may be liable *to Ford* for all or part of Plaintiffs' claims against Ford. It is, therefore, vital to recognize that Plaintiffs have chosen to sue Ford alone based upon theories of strict products liability.

Furthermore, impleader is available only "when the third party defendant's liability is secondary to, or a derivative of, the original defendant's liability on the original plaintiff's claim." *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir.1982). Rule 14 is "strictly limited to situations where the *very existence of potential liability* in the third-party defendant is dependant on the outcome of the main claim." *A.J. Kellos*

---

1. Plaintiffs assert claims against Ford based only upon design defect, and failure to warn. *See* Ga.Code Ann. § 51–1–11 (Michie Supp.1996).

2. Plaintiffs assert that Defendant filed the third party complaint in an untimely manner. Pursuant to Federal Rules of Civil Procedure 14(a) and 6, Defendant's third party complaint was filed in a timely manner. Plaintiffs' contention in this regard is meritless.

*Constr. Co., Inc. v. Balboa,* 86 F.R.D. 544, 545 (S.D.Ga.1980) (emphasis added).

## II. *Enhanced Injury Cases*

 In Georgia, a case alleging a design defect involving the crashworthiness of a vehicle where injuries result after an initial collision is referred to as an "enhanced" injury case. *Polston v. Boomershine Pontiac–GMC Truck, Inc.,* 952 F.2d 1304, 1305 (11th Cir.1992). In theory, as Plaintiffs contend in this case, there are two "collisions." First, there is an initial collision that presumably causes some injuries to the passengers of the vehicle. Second, there is another "collision" or accident caused by the unworthiness of the vehicle to protect the passengers from a crash, which may enhance or aggravate the injuries caused by the first collision. *See id.* at 1305–06.[3] In the case at bar, Plaintiffs contend that although Carr caused the initial collision, the deaths of the passengers were due solely to the defective crashworthiness of the Explorer. Plaintiffs contend that after the original collision with Carr, the Explorer permitted gasoline to reach other parts of the vehicle, which caused the fire. In other words, Plaintiffs allege that the initial collision with Carr and the injuries resulting from that original collision are completely severable from the deaths caused by the defective design and resulting fire. Plaintiffs have not, therefore, sued Carr. Rather, they have asserted numerous products liability causes of action against Ford, claiming that the deaths are divisible from the injuries caused in the first collision.

Determining whether Ford properly has impleaded Carr requires the Court to evaluate the burdens facing Ford at trial and the claims for which it may be liable after trial. The burdens facing Ford are based on the law established by a trilogy of cases involving a similar factual scenario.

## III. *Polston Trilogy*

In *Polston,* the plaintiff collided with another vehicle driven by Joyce Banks ("Banks"). *Id.* at 1305 (*"Polston I"*). The plaintiff claimed that her Pontiac Sunbird was defectively designed and that her injuries were severely enhanced by that defective design. *Id.* She sued Banks in negligence, as well as GMC, the automobile manufacturer, based upon defective design.[4] The plaintiff appealed to the Eleventh Circuit since the district judge granted GMC's motion for a directed verdict after plaintiff presented her case. *Id.* at 1306. In determining the merits of the appeal, the Eleventh Circuit realized that the case involved a question of Georgia law that was unanswered by controlling precedent. That question was whether the plaintiff or defendant in a crashworthiness or "enhanced injury" case bears the burden of "specifically apportioning damages between the striking driver and the manufacturer ...?" *Id.* at 1310.[5] The Eleventh Circuit thereupon certified the issue for resolution by the Supreme Court of Georgia. *Id.* at 1310–11.

The Supreme Court of Georgia accepted the certified question and clarified the issue. *Polston v. Boomershine Pontiac–GMC Truck, Inc.,* 262 Ga. 616, 423 S.E.2d 659 (1992) (*"Polston II"*). In *Polston II,* the Supreme Court of Georgia began its answer by stating that "where the acts of two or more tortfeasors join to create a single indivisible injury, i.e., the injury cannot be rationally apportioned between the tortfeasors, the tortfeasors will be treated as joint tortfeasors." *Id.,* 423 S.E.2d at 661 (citing

---

3. The Court realizes that Plaintiffs' contention is that the deaths—or "enhanced injuries"—were caused by a fire, not a second collision in the form of the Explorer "crushing" the victims. The term "collision" is used, therefore, as a term of art when referring to the injuries allegedly caused as a result of the unworthiness of the vehicle.

4. The plaintiff ultimately settled her claim with Banks. *Id.* at 1306 n. 1. She also dismissed the claims she asserted against several automobile dealerships. *Id.*

5. The Eleventh Circuit, based upon *Higginbotham v. Ford Motor Co.,* 540 F.2d 762 (5th Cir.1976), determined that Georgia law did "require the plaintiff to prove the existence of enhanced injuries, that the manufacturer and striking drivers are not joint tortfeasors, and that the manufacturer is only liable for the enhanced injuries...." *Polston I,* 952 F.2d at 1307. The Eleventh Circuit noted, however, that *Higginbotham* did not interpret "Georgia law to place the burden of apportionment on the plaintiff." *Id.*

*Mitchell v. Gilson,* 233 Ga. 453, 211 S.E.2d 744 (1975)). After a lengthy analysis concerning the split of authority on this issue in several jurisdictions, the Supreme Court of Georgia stated that

> in an enhanced injury or crashworthiness case, Georgia law places on the plaintiff the burden of proving that a design defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision. To the extent that the injuries suffered by the plaintiff are indivisible, the defendants are treated as joint tortfeasors. Once the plaintiff's burden has been borne, *the burden of proof shifts to the defendant* which wishes to limit its liability *to demonstrate a rational basis* for apportioning the liability for the injuries.

*Polston II,* 423 S.E.2d at 662 (emphasis added).

After the Supreme Court of Georgia answered the certified question, the Eleventh Circuit, in a *per curiam* opinion, reversed the district court's granting of a directed verdict to GMC. *Polston v. Boomershine Pontiac-GMC Truck, Inc.,* 987 F.2d 730 (11th Cir. 1993) ("*Polston III* "). The Eleventh Circuit stated that "defendant GMC bears the burden of demonstrating a rational basis for apportioning the liability for Polston's injuries...." *Id.* at 732.

■ Thus, after the *Polston* trilogy, it appears that Georgia subscribes to a unique rule in "enhanced injury" cases that requires the defendant to bear a substantial burden at trial, assuming the plaintiff first satisfies its initial burden.[6] Given the rules enunciated by the *Polston* trilogy, once the plaintiff proves that the defect was a "substantial

factor" in producing injuries beyond those caused in the first collision, the defendant must demonstrate a rational basis for apportioning the liability for the plaintiff's injuries. That demonstration, however, does not depend on impleading the initial tortfeasor. In *Polston I,* all claims against the initial tortfeasor were settled and she was dropped as a defendant from that litigation. GMC apparently was able, therefore, to demonstrate a rational basis for apportionment without having Banks named as a party in that action.

■ Although Defendant must bear a substantial burden at trial, introducing Carr into this case is not the only way for Ford to satisfy that burden.[7] Moreover, if Carr were liable at all, then he would not be liable directly to Ford, but rather would be liable only to Plaintiffs for causing the original collision. Ford is being sued based upon theories of products liability, not for simple negligence in causing the accident in question. If Ford were to implead other manufacturers or product intermediaries who, in theory, could be liable *directly* to Ford, then use of Rule 14 would be proper.

The Court finds that Ford will not be unfairly prejudiced by the absence of Carr as a party to this litigation. Plaintiffs have agreed that Ford may "litigate the nature and velocity of the crash...." (Pls.' Mot. to Dismiss Third Party Action at 8.) Thus, Ford may introduce evidence that the original collision involved another driver, as well as the facts surrounding that collision. However, due to the posture of this case, if Ford were found liable for causing the deaths of the passengers, it will be based on products liability theories of which Carr is completely

---

6. The only case of which the Court is aware that has interpreted the rules established by the *Polston* trilogy is *Brinks v. Robinson,* 215 Ga.App. 865, 452 S.E.2d 788 (1994). For several reasons, *Brinks* does not offer the Court clear guidance on the issues in the case at bar. *Brinks* involved two automobile accidents involving the plaintiff that were separated in time by nearly four months. *Id.,* 452 S.E.2d at 789. The court in *Brinks* distinguished *Polston II* by recognizing that "in 'crashworthiness' cases [the] alleged negligence of a defendant manufacturer and a defendant driver converge at the time of a single accident so that they logically constitute a 'series of occurrences'...." *Id.* at 790. Basing its

analysis on the Georgia permissive joinder rules, and not Rule 14, the *Brinks* court determined that it is improper to join defendants from two separate accidents not amounting to a "series of occurrences." *Id.* Moreover, it was the plaintiff in *Brinks,* not the defendant, who was seeking to join parties in a single lawsuit who were directly liable to the plaintiff. In the case at bar, Defendant, not Plaintiffs, desires to add Carr.

7. Either party in this action could, theoretically, subpoena Carr as a witness. Additionally, a rational basis demonstration could be made through the use of experts.

uninvolved and for which Carr would not be liable to Ford. Introducing Carr into this litigation would unfairly focus the attention away from the primary issues in this case.[8]

**CONCLUSION**

The Court has considered thoroughly Defendant's position in this matter. For the foregoing reasons, Plaintiffs' motion to dismiss the third party complaint is hereby **GRANTED.**

**SO ORDERED.**

---

8. Plaintiffs also assert that the Court lacks personal jurisdiction over Carr. While the Court disagrees with Plaintiffs' assertion, there is no reason for the Court to discuss the matter, given its holding on the substantive issues involved.